# JAMES KOUSOUROS
Attorney at Law

≈

80-02 Kew Gardens Road, Suite 1030, Kew Gardens, New York 11415
718-575-5450, 4131 · 718-793-0165 fax
Email; JK5665@aol.com

Honorable Richard J. Sullivan
United States District Judge
United States Courthouse
500 Pearl Street, Room 615
New York, New York 10007

                      Re:    **United States v. King et al.**
                                  S2 07 Cr. 756 (RJS)

Dear Judge Sullivan:

      Pursuant to the Court's order of July 1, 2008, we are submitting the following as Deondray King's *in limine* requests, and in response to the government's 404(b) proffer and *motion in limine*.

      Although not included within the purview of the government's latest *in limine* submission, the government has previously informed us of their intent to offer a recording of an April 3, 2008 conversation between Mr. King, who was then confined at the M.D.C. and an unidentified male. (We have annexed a copy of the draft transcript of this conversation as an exhibit). The relevant portions of the exchange are as follows:

| | |
|---|---|
| UM1: | Eh, did you hear what's going on? |
| UM2: | What? |
| UM1: | Slick (ph) |
| UM2: | What happened? |
| UM1: | It's bad. He got . . . He got booked. |
| UM2: | How. |
| UM1: | He got caught with like, 274 jones. |
| UM2: | Get the hell out of here. |
| UM1: | It's like 900 . . .900, like 900 (U/I) |
| UM2: | Wow. |
| UM1: | Yep. |
| UM2: | Where was he at? |
| UM1: | It was at (U/I), in, in the house. |

| | |
|---|---|
| UM2: | In his house? |
| UM1: | Yeah.  Going federal.  Yep. |
| UM2: | (U/I) |
| UM1: | Yeah.  (U/I) is dead (PH). |
| UM2: | (U/I) |
| UM1: | That dog is crazy. He uh...he uh.. . It's all over the news. It's in the paper now. |
| UM2: | Unbelievable. |
| UM1: | Yeah. |
| UM2: | Send me the article. |
| UM1: | Uh, I've got it. That's like, wow, that's crazy. They said, they said they was (U/I)- they was following him for the last- they got a tip. Think somebody was following for the last three weeks. And they (U/I). Somebody-they, they came to the house. They pulled him over. And uh...he had like 52,000 on him. That uh...they said he had, got a search warrant for the house. Went in there. They found uh, like 274 kilos (PH). They went down to South Jersey. They found like 800. |
| UM2: | Unbelievable. |

(Exhibit 1, p. 1, et. seq.)

The government asserts (and we do not contest) that UM1 is Mr. King, and that this portion of the conversation refers to the narcotics arrest of an individual familiar to both speakers.

There are certain indisputable facts which position the relative context of this telephone exchange. It took place approximately four (4) months after Mr. King's arrest for the conspiracy alleged in this indictment. Neither the unidentified male nor the referenced arrestee ("Slick") are alleged to be members of, or affiliated with, the charged conspiracy. Nor does the government seem to claim that Mr. King had any criminal involvement with the activities that led to "Slick's" arrest. Instead, they wish to offer this conversation "as an admission of a party-opponent, pursuant to Rule 801 (d) (2) of the Federal Rules of Evidence, or, alternatively, pursuant to 404(b) of the Federal Rules of Evidence, as proof of knowledge, identity, intent, and/or absence of mistake. (Government's Letter, dated June 2, 2008, annexed hereto as Exhibit 2).

As a preliminary matter, we do not dispute that, as words uttered by Mr. King himself, his statements on the tape may technically constitute an admission under 801(d)(2). **McCormick, Evidence,** 262 (Cleary ed. 1972); **J. Weinstein & Berger, 4**, **Weinstein's Evidence** P801(d)(2)(A)(01) at 801-116 to 117. Nevertheless, the fact that they are in admissible form does not guarantee their introduction. Party-admissions, like all other evidence, must survive judicial scrutiny under Rules 401 and 403 of the Federal Rules of Evidence. **See, e.g**., **United States v. Yakobov**, 2001 WL 1312727 *2 (2nd Cir.). Moreover, discussions of unrelated narcotics activity, offered to show knowledge of the trade, dangerously approach the boundaries through which 404(b) evidence cannot pass given the potential prejudice inherent in such conversations. **See United**

**States. v. Bouloute**, 185 Fed. App. 102, 105 (2nd Cir. 2006). We submit that the proffered evidence should not be admitted under either theory posited by the government.

Rule 404(b) provides that evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." It may be admitted, however, for "other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident ...."

The standards in the Second Circuit for admission of other acts evidence under Rule 404(b) are well-established and exacting. The trial court must initially determine if the evidence is offered for one of the purposes allowed by Rule 404(b). If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case; and, if relevant, the court must then assess whether the probative value of the evidence is substantially outweighed by the risk of unfair prejudice from its admission. **United States v. Garcia**, 291 F.3d 1271 135 (2d Cir. 2002); **United States v. Pitre**, 960 F.2d 1112, 1119 (2d Cir. 1992). While it is clear that the Second Circuit takes an "inclusionary" approach to admitting prior acts evidence, "[t]here is no presumption that such other-crimes evidence is relevant." **United States v. Manafzadeh**, 592 F.2d 81, 86 (2d Cir. 1979). The evidence must pass the requisite judicial muster enunciated by the Second Circuit and the fact that certain issues may be in dispute does not guarantee the admission of the proffered evidence.

Indeed courts have recognized repeatedly that simply because knowledge and intent are technically at issue, Rule 404(b) evidence should not be admitted where the nature of the defense is such that they "are not really in dispute." **United States v. Colon**, 880 F.2d 650, 656 (2d Cir. 1989); **United States v. Mohel**, 604 F.2d 748 (2d Cir. 1978); **United States v. Benedetto**, 571 F.2d 1246, 1249 (2d Cir. 1978). The rationale of this evidentiary philosophy was cogently articulated by the Second Circuit in **United States v. Ortiz**, 857 F.2d 900 (2d Cir. 1988). In that case, the court explained that even though intent must be proven by the government, for 404(b) purposes intent is not in issue when a defendant claims he did not commit the charged act at all, and that where the defendant relies on such a defense, "evidence of other acts is not admissible for the purpose of proving intent." 857 F.2d at 904. Thus, the court agreed with the lower court's decision to exclude the defendant's prior drug convictions in a case in which the defense at trial was that it was not the defendant, but someone else, who sold drugs to an undercover officer.

Similarly, in **United States v. Tarricone**, 996 F.2d 1414 (2d Cir. 1993), the court re-emphasized its concern for the admission of prejudicial, superfluous evidence. In no uncertain terms, the court opined that "in some circumstances the very nature of a defense put forward by the defendant may itself remove an issue from a case." The need for any such prejudicial evidence is obviated, "[w]here a defendant claims that he did not commit the charged acts, as opposed to claiming that he acted innocently or mistakenly . . . " In such an instance, "[w]hen a defendant unequivocally relies on such a defense, evidence of other acts is not admissible for the purpose of proving intent." 996 F.2d at 1421-22.

This judicial concern for the receipt of gratuitously damaging evidence has resulted in a proscribed mechanism for trial courts to follow. The Second Circuit has explained that, if a defendant removes the element of intent or knowledge from a case, prior act evidence cannot be introduced for the purpose of establishing that element. **United States v. Colon**, 880 F.2d 650, 656-57 (2d Cir.1989); **United States v. Figueroa**, 618 F.2d 934, 941-42 (2d Cir.1980). It is axiomatic that the defendant must then clearly and unequivocally remove the element from the case. As the court noted:

> Whether an issue remains sufficiently in dispute for similar acts evidence to be material and hence admissible, unless the prejudicial effect of the evidence substantially outweighs its probative value, depends not on the form of words used by counsel but on the consequences that the trial court may properly attach to those words. When the Government offers prior act evidence to prove an issue, counsel must express a decision not to dispute that issue with sufficient clarity that the trial court will be justified (a) in sustaining objection to any subsequent cross-examination or jury argument that seeks to raise the issue and (b) in charging the jury that if they find all the other elements established beyond a reasonable doubt, they can resolve the issue against the defendant because it is not disputed.

**United States v. Figueroa**, 618 F.2d at 942.

In the instant case, Mr. King avers that *he was not* a member of the conspiracy as charged in this indictment. He *did not* join and agree to distribute heroin and/or cocaine with the persons listed in the indictment, during the time periods so alleged. Conversely, he will make *no* claim, either through argument, examination or evidence, that he was never involved in any fashion with narcotics trafficking. Neither will he claim that he is ignorant of the general nuances of the drug trade, or that he does not know persons so involved. He is simply asserting that he was *never* a member of *this* conspiracy - not that his participation was innocent or unknowing, or that he was duped - but that he did not commit the factual criminal acts charged. Mr. King's posture in this regard is unequivocal and unchanging, and we will commit it to whatever form the court deems necessary.

Given this posture, there is no question but that the minimal residual relevancy of the profered evidence is far outweighed by the prejudice inherent in a post-indictment conversation about "kilos," "jones," and arrests "going federal."

**The Cross examination of Blaudin Mejia**

We do not take issue with the government's proposed limitations on the cross-examination of Blaudin Mejia; their requests appear to properly track the law governing extrinsic evidence and conduct which inheres to honesty and credibility.

**The Admissibility of King's Prior Incarceration, Supervised Release and Current Incarceration.**

We have a greater concern for the three separate proffers of evidence that will make clear to the jury that Mr. King is a convicted narcotics trafficker. First, the government seeks to introduce co-conspirator statements alluding to a prison relationship between Edison Abadia and Mr. King while the latter was imprisoned with Abadia at Fort Dix. Ostensibly, the government seeks to prove that the contact with Abadia was the conduit through which King was introduced to the charged conspiracy. While we acknowledge the theoretical relevance of the King-Abadia relationship, the government's proffer is devoid of sufficient facts to warrant the introduction of this evidence. Essentially the government seeks to establish that one member of this conspiracy - Abadia - was at Fort Dix at the same time King was imprisoned there and that the two were housed in a manner which made communication between them possible. The government will then present a witness who will state that King's introduction to this conspiracy was made possible through a prison contact. Other than demonstrating the physical possibility of the above events, the government has not profered any evidence that such communication *actually took place*. As such, a critical and indispensable component of the government's puzzle is missing thus transforming this into impermissible and highly prejudicial speculation of insufficiently established relevance.

Even if the government were able to complete the narrative so as to render this evidence proper, we are hard-pressed to understand the necessity for any allusion to prison. Assuming the government can establish that a conversation or introduction in fact occurred, the government is free to have their witnesses describe the fact of the contact without reference to the place in which it occurred. There is no special relevance attendant to prison contact, and it can be easily sanitized from the government's narrative. Yet, it is beyond dispute that any such allusion to a defendant having been in federal prison is inherently prejudicial and in some cases insurmountably so. Should the court permit this evidence, there should not be permitted any mention of Mr. King's prior incarceration.

The next prong to the government's proffer is the introduction of evidence through Mr. King's supervised release officer, who will undoubtedly describe the terms and conditions of his post-custodial release thus further compounding the prejudice attendant to Mr. King's prior conviction and incarceration. The government will elicit from this witness: 1) the identity of King's mother and ex-girlfriend;  2) King's reported employment at a restaurant; 3) King's monthly reports to the officer including statements of income and residence; and 4) the officer's obtaining photographs identified as having been taken at King's wedding and obtained from a professional photographer. We submit that any evidence of Mr. King's supervised release - clearly based upon a federal conviction - should not be permitted and that there are means with which this can be accomplished without compromising the government's presentation of its evidence.

With respect to items 1 and 2 this evidence will establish that Mr. King had access to certain telephones allegedly used in connection with this conspiracy. We will stipulate to the identity of Mr. King's mother and ex-girlfriend as well as his reported employment at All Aboard Seafood and the

telephone numbers assigned to these individuals. With regard to the income statements and residence, we will stipulate as to Mr. King's residence as reported. With respect to the photographs from Mr. King's wedding, these photographs were obtained from the internet. The government does not need to introduce these photographs through a supervised release officer and to do so would only serve to prejudice Mr. King unnecessarily. The photographs are of a wedding and most certainly will speak for themselves and the government's witness (not the supervised release officer) can certainly identify a person related to the conspiracy if such a person is in any of the photographs. Given this posture, the need to call Mr. King's supervised release officer is entirely obviated and all that will be left from permitting this witness to testify in the manner posited by the government is the ensuing prejudice which cannot be credibly disputed. As a custodial witness, the probative value to his status as a supervised release officer is clearly outweighed by the cumulative prejudice. Should the government be unwilling to enter into the stipulations described above, we ask the Court to limit the testimony of this witness in a manner which excludes his employment or Mr. King's status as a convicted felon on supervised release.

We have already described at some length the "jailhouse-to-landline" telephone conversation the government is seeking to introduce. In addition, the government has proffered in-house "jail-bus" conversations between Mr. King and a cooperating witness. While we do not credit that the conversations occurred as the witness describes, we cannot credibly challenge the government's right to present them however again we submit that the fact of Mr. King's detention is unecessary to complete the narrative of this evidence.

**Admissibility of Co-Conspirator Statements Pursuant to Rule 801 (D) (2) (E).**

The government has described, in general form, certain statements it will seek to introduce as statements of co-conspirators. The defense respectfully reserves the right to challenge both the admissibility and the timing of admission of any such statements upon notice of the declarants and the substance of the statements set forth for admission.

Wherefore, based upon the foregoing, we respectfully request that the court grant the within motion in its entirety, and for such other and further relief as may be necessary and proper.

Respectfully Submitted,

JAMES KOUSOUROS